**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MORIAH NORMAN,<br><br>Plaintiff,<br>v.<br><br>VICKI BEHENNA, in her official capacity as District Attorney for Oklahoma County, and<br>VICKI BEHENNA, individually,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Moriah Norman ("Plaintiff" or "Ms. Norman"), by and through undersigned counsel, for her Complaint against Defendant Vicki Behenna, in her official capacity as the District Attorney for Oklahoma County, Oklahoma, and individually ("Defendant" or "Behenna"), states and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil rights action brought under 42 U.S.C. § 1983 arising from Defendant's viewpoint-based blocking of Plaintiff from the official "Oklahoma County District Attorney" Facebook page located at https://www.facebook.com/OKCountyDistrictAttorney (the "Office Page"), an institutional social-media account operated by, and on behalf of, the Oklahoma County District Attorney's Office (the "Office").

2. Plaintiff is a survivor of sexual assault and a local public advocate for the rights of crime victims and survivors in Oklahoma. Through her personal, public

Facebook account, Plaintiff has spoken out on matters of significant public concern, including the treatment of victims and survivors by the Office.

3. Because of, and in retaliation for, that protected speech, Defendant, acting under color of state law, blocked Plaintiff from the Office Page, preventing her from viewing, commenting on, sharing, or otherwise interacting with the official communications the Office disseminates on that platform.

4. Plaintiff remains blocked as of the filing of this Complaint. She was given no notice, no explanation, and no opportunity to be heard before or after being blocked.

5. Plaintiff brings this action for declaratory and injunctive relief, compensatory and nominal damages, punitive damages, and attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)-(4) (civil rights), because this action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

7. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 and injunctive relief under Federal Rule of Civil Procedure 65.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant performs her official duties in Oklahoma County, Oklahoma, and a substantial part of the events or omissions giving rise to this action occurred in Oklahoma County, which lies

within the Western District of Oklahoma. Plaintiff also resides in Logan County, within this District.

## PARTIES

9. Plaintiff Moriah Norman is a natural person and a resident of Logan County, Oklahoma, within the Western District of Oklahoma.

10. Defendant Vicki Behenna is, and at all times relevant to this Complaint has been, the duly elected District Attorney for Oklahoma County, Oklahoma, having assumed office on January 2, 2023. She is sued in both her official capacity as District Attorney for Oklahoma County and in her individual capacity.

11. At all times relevant to this Complaint, Defendant acted, and continues to act, under color of state law within the meaning of 42 U.S.C. § 1983.

12. As District Attorney, Defendant possesses final policymaking authority over the operation, content, and administration of the Office's official social-media accounts, including the Office Page, and/or has ratified the acts of subordinate employees who administer the Office Page on her behalf and with her authorization.

## FACTUAL ALLEGATIONS

13. The Office maintains and operates an official Facebook page found at https://www.facebook.com/OKCountyDistrictAttorney.

14. The Office Page is titled "Oklahoma County District Attorney" and is presented to, and understood by, the public as the institutional voice of the Office itself, rather than the personal account of any individual officeholder.

15. Upon information and belief, the Office Page is administered using government resources and/or by Office staff acting within the scope of their employment, and is used to disseminate press releases, case updates, public-safety information, and other communications concerning the official business of the Office.

16. Upon information and belief, Defendant, as the Office's final policymaker, possesses actual authority to speak on behalf of the Office through the Office Page, and purports to exercise, and to authorize her staff to exercise on her behalf, that authority in maintaining, moderating, and controlling public access to the Office Page, including decisions to block members of the public from it.

17. Plaintiff is a sexual-assault survivor who has, since her own assault, become a vocal public advocate for crime victims and survivors in Oklahoma, including through community advocacy, working on legislative reform, court accompaniment, and public education efforts.

18. Plaintiff has used her personal, public Facebook account to speak on matters of significant public concern, including the treatment of crime victims and survivors by prosecutors and the courts, the handling of specific criminal cases, and the policies and practices of the Office and other prosecutors' offices throughout the state.

19. On multiple occasions, Plaintiff publicly and pointedly criticized the Office, including the conduct of an Assistant District Attorney toward crime victims, and called on Defendant, by name, to take corrective action within the Office.

20. Plaintiff's advocacy and criticism of the Office concern matters of public interest and constitute speech fully protected by the First Amendment.

21. Upon information and belief, Defendant, or Office personnel acting on her behalf and with her authorization, blocked Plaintiff from the Office Page on a date presently unknown to Plaintiff, but no later than early 2026, in direct response to Plaintiff's public criticism of, and commentary about, the Office.

22. Plaintiff was given no advance notice, no warning, and no explanation before being blocked.

23. Plaintiff was given no opportunity to contest or appeal the decision to block her, and, upon information and belief, the Office maintains no established policy or process by which a blocked member of the public may seek reinstatement.

24. Plaintiff first discovered that she had been blocked from the Office Page in early 2026, when she attempted to tag the Office in one of her own public Facebook posts and found she was unable to do so. In a subsequent public post, Plaintiff explained that she would tag the Office, but that she had "long been blocked," adding, "that's what they do when you speak up."

25. Plaintiff was not blocked for spamming, harassment, obscenity, off-topic posting, or any other content-neutral reason. Upon information and belief, Plaintiff was blocked because of, and in retaliation for, the viewpoint she expressed in criticizing the Office.

26. As a direct result of being blocked, Plaintiff cannot view, comment on, share, tag, or otherwise interact with the Office Page.

27. Because the Office Page is a government-operated account used to disseminate official public-safety and case information relevant to Plaintiff's advocacy

work and civic participation, Plaintiff's exclusion from the Office Page deprives her of access to government information available to every other member of the public and impairs her ability to engage in her advocacy work, including monitoring and responding to the Office's public statements about matters relevant to her and those she supports.

28. Defendant's conduct has chilled, and continues to chill, Plaintiff's speech. Plaintiff remains fearful that continuing to publicly speak about the Office will invite further retaliation.

29. Plaintiff remains blocked from the Office Page as of the filing of this Complaint.

30. On or around April 8, 2026, Plaintiff published a public Facebook post that was critical of behavior she had personally witnessed from of one of the Office's prosecutors, Assistant District Attorney Michele McElwee, while a victim impact statement was being read by another survivor. Upon information and belief, shortly thereafter, Assistant District Attorney Pamela Stillings ("ADA Stillings"), another prosecutor within Defendant's office, repeatedly contacted Plaintiff's victim advocate with the YWCA directly regarding Plaintiff's post. Rather than responding to Plaintiff's account through any formal or public channel, ADA Stillings characterized Plaintiff's public statements as a problem requiring management, and requested that Plaintiff's advocate begin reviewing Plaintiff's public statements in advance and wanting the advocate to explain the Office's position to Plaintiff and other victims who might share her views.

31. Approximately one week later, Plaintiff published another public Facebook post disputing representations made on the Office's official Facebook page regarding

victim safety protocols, in which Plaintiff described being denied a requested protective accommodation from her abuser during court proceedings and a subsequent in-person encounter with her abuser in the courtroom as a result. Once again, shortly thereafter, ADA Stillings contacted Plaintiff's victim advocate with the YWCA regarding Plaintiff's post and again tried to get the advocate to persuade Plaintiff to stifle her criticisms.

32. This repeated effort to suppress or redirect Plaintiff's public speech through a third party, rather than through legitimate, content-neutral engagement, is consistent with, and further evidence of, the viewpoint-based motive underlying Defendant's decision to exclude Plaintiff from the Office's Facebook page.

33. Compounding the harm caused by the blocking, Plaintiff has learned that at least one Office personnel, including Communications Director, Brook Arbeitman ("Director Arbeitman"), have continued to view content she has shared on her personal, public Facebook profile despite not being connected to her as "friends" on the platform, requiring them to affirmatively seek out her profile to do so.

34. Specifically, on or about August 3, 2026, Plaintiff learned that Director Arbeitman had viewed a "story" Plaintiff had shared concerning her child, despite having no connection to Plaintiff on the platform. Plaintiff reasonably perceived this as an intimidation tactic connected to her having been outspoken about the Office, and it caused her significant distress.

35. On or about August 8, 2026, Director Arbeitman viewed Plaintiff's Facebook page once again, demonstrating that the Office was regularly monitoring Plaintiff's online presence, again causing distress.

36. As a direct and proximate result of Defendant's conduct described in this Complaint, Plaintiff has suffered, and continues to suffer, actual damages, including emotional distress, anxiety, a sense of intimidation and vulnerability, and interference with her ability to safely and freely engage in the very survivor-advocacy work that gave rise to Defendant's retaliation.

## LEGAL FRAMEWORK

37. The First Amendment, made applicable to the States and their political subdivisions through the Fourteenth Amendment, prohibits government officials from excluding individuals from government-controlled speech platforms because of the viewpoint they express.

38. In *Lindke v. Freed*, 601 U.S. 187 (2024), the Supreme Court held that a public official's social-media activity constitutes state action under 42 U.S.C. § 1983 when the official (1) possessed actual authority to speak on the State's behalf on the matter in question, and (2) purported to exercise that authority in the conduct at issue.

39. Unlike the personal, "mixed use" social-media account at issue in *Lindke*, the Office Page here is not the personal account of an individual officeholder; it is an institutional page belonging to, branded as, and operated in the name of the Office of the Oklahoma County District Attorney itself, used to communicate official Office business to the public. This distinction confirms that the challenged conduct is fairly attributable to the State.

40. Because the Office Page functions as a public forum for engagement with the Office on matters of official business, Defendant's exclusion of Plaintiff from that

forum because of her viewpoint is subject to strict scrutiny and cannot be justified by any legitimate, let alone compelling, governmental interest.

**<u>CAUSE OF ACTION I - 42 U.S.C. § 1983 – FIRST AMENDMENT</u>**
**(Against Defendant in Her Official and Individual Capacities)**

41. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

42. Plaintiff's Facebook posts and comments criticizing the Office's treatment of crime victims and survivors constitute speech on matters of public concern, fully protected by the First Amendment.

43. Defendant, acting under color of state law, blocked Plaintiff from the Office Page because of the viewpoint Plaintiff expressed in that protected speech.

44. Defendant's viewpoint-based exclusion of Plaintiff from a government-operated social-media forum constitutes discrimination and retaliation forbidden by the First Amendment.

45. Defendant's conduct would deter a person of ordinary firmness from continuing to engage in protected speech, and did in fact chill Plaintiff's speech.

46. There is a direct causal connection between Plaintiff's protected speech and Defendant's decision to block her; Plaintiff was not blocked for any content-neutral, legitimate reason.

47. Defendant's conduct was not narrowly tailored to serve any compelling, substantial, or even legitimate governmental interest.

48. The absence of any legitimate, content-neutral justification for Defendant's conduct is further confirmed by the manner in which Plaintiff was blocked: Defendant gave Plaintiff no advance notice, no warning, and no explanation before blocking her, provided no opportunity to contest or appeal that decision, and maintains no established policy or process by which a blocked member of the public may seek reinstatement. A defendant acting for a legitimate, content-neutral reason has no cause to conceal that reason or to forgo any process; the absence of any notice, explanation, or avenue for reinstatement is itself evidence that Plaintiff was blocked because of her viewpoint.

49. Defendant's viewpoint-based motive is further evidenced by the Office's efforts, through ADA Stillings, to suppress and redirect Plaintiff's public criticism, and by Office personnel's repeated monitoring, including by that of Director Arbeitman of Plaintiff's protected online speech.

50. As the Office's final policymaker, and/or through her ratification of, or acquiescence in, the acts of subordinate employees carried out with her knowledge and authorization, Defendant is liable in her official capacity for this ongoing constitutional violation, entitling Plaintiff to declaratory and injunctive relief.

51. Defendant is also liable in her individual capacity because she personally directed, authorized, or ratified the decision to block Plaintiff, or because she, as the Office's chief administrator, is responsible for a practice of blocking members of the public based on their viewpoint, of which the blocking of Plaintiff is one instance.

52. At the time Defendant blocked Plaintiff, it was clearly established that a government official may not exclude a member of the public from an official government

social-media account because of the viewpoint that member has expressed. Defendant is therefore not entitled to qualified immunity for her individual-capacity conduct.

53. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, injury to her First Amendment rights, emotional distress, and other damages in an amount to be proven at trial.

**COUNT II – ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988**
**(Against Defendant in Her Official and Individual Capacities)**

54. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

55. Should Plaintiff prevail on any claim brought under 42 U.S.C. § 1983 in this action, she is entitled to recover her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Moriah Norman respectfully requests that this Court enter judgment in her favor and against Defendant, and award the following relief:

A. A declaratory judgment that Defendant's act of blocking Plaintiff from the Office Page violated Plaintiff's rights under the First Amendment to the United States Constitution, as made applicable to Defendant through the Fourteenth Amendment;

B. A permanent injunction ordering Defendant to immediately restore Plaintiff's full access to the Office Page, including her ability to view, comment on, share, and tag the Office Page, and enjoining Defendant, her agents, employees, and successors

in office from blocking or otherwise restricting Plaintiff's access to any official Office social-media account on the basis of her viewpoint;

C. Compensatory damages in an amount to be determined at trial, including for emotional distress and other actual damages;

D. Nominal damages;

E. Punitive damages against Defendant in her individual capacity, in an amount to be determined at trial;

F. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G. Pre-judgment and post-judgment interest as allowed by law; and

H. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s *Rhiannon K. Thoreson*

Rhiannon K. Thoreson, OBA No. 22748
Rhiannon Thoreson Law, PLLC
7101 S. Yale Ave. #182
Tulsa, OK 74136
Telephone: (918) 921-5683
rhiannon@rhiannonthoresonlaw.com
***Attorney for Plaintiff***